### No. 10,112.

### McAndrews *v*. The People.

Decided July 3, 1922.

Plaintiff in error was convicted of murder in the second degree.

### *Reversed.*

1.  Criminal Law—*Murder—Malice—Blow of Fist.* To make a homicide murder, it must have been perpetrated with malice. Ordinarily a blow with the fist does not imply malice, an intent to kill. There may be circumstances surrounding such a homicide from which an inference of malice would be proper.

2.  *Instructions—Assumption of Facts.* Instructions should be based upon the evidence, and an instruction, although announcing a correct principle of law, that impliedly assumes the existence of evidence which was not given, is erroneous.

3.  Instructions—*Malice—Erroneous.* Instruction reviewed and held to be erroneous as containing statements of fact which might have misled the jury; and in conflict with the great weight of decisions on the question of implied malice.

4.  Criminal Law—*Implied Malice—Jury Question.* The question of implied malice is for the jury, to be determined under proper instructions as to the law, and with the facts in evidence alone as the basis of the finding.

*Error to the District Court of the City and County of Denver, Hon. Warren A. Haggott, Judge.*

Mr. E. M. SABIN, Mr. A. E. McGLASHAN, Mr. L. P. ERNY, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. FORREST C. NORTHCUTT, assistant, Mr. JAMES E. GARRIGUES, for the people.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

HARRY McANDREWS, hereinafter referred to as defendant, was tried for the murder of one Keim, hereinafter designated by name, or as deceased, and found guilty of murder in the second degree. He brings the record here on error for review.

The essential facts are that Keim and McAndrews, on the evening of Sunday, November 21, 1920, were driving in the same direction across the Twentieth Street viaduct, in the city of Denver. The defendant, in a truck, passed the car in which the deceased was driving, and shortly thereafter collided with another automobile. Deceased stopped his car in the immediate vicinity of the accident, gave his name to the owner of the damaged car, and offered himself as a witness in case needed. This precipitated an altercation between himself and McAndrews. The latter is a vigorous man, of robust health, about twenty-five years old, weighing about one hundred and ninety-five pounds.

It appears that the defendant struck Keim with his fist in the face, knocking him down on one knee. According to some of the witnesses, this blow was followed up by other blows while Keim was retreating. Where these other blows struck Keim, or what their effect was, does not appear. Later after deceased had returned to his own car, McAndrews attempted to drag him out by the leg, evidently intending further punishment.

On the Tuesday following the altercation Keim died, and an autopsy showed that his skull had been fractured at its base, at the back of the head. McAndrews and Keim were total strangers.

To make the killing murder, it must have been perpetrated with malice. Ordinarily a blow with the fist does not imply malice, an intent to kill.

In *Murphy v. People,* 9 Colo. 435, 13 Pac. 528, this court quotes with approval from *Commonwealth v. Fox,* 7 Gray, (Mass.) 585, as follows:

"If, therefore, death should ensue from an attack made with the hands and feet only, on a person of mature years, and in full health and strength, the law would not imply malice, because, ordinarily, death would not be caused by the use of such means. But the inference would be quite different if the same assault and battery were committed on an infant of tender years, or upon a person enfeebled by old age or worn out with disease."

In the case above mentioned this court pointed out, as bearing upon the question of malice, that the assault was there made upon one physically weak and diseased, and known to the defendant so to be.

A recent case on this subject is *People v. Crenshaw,* 298 Ill. 412, 131 N. E. 576, 15 A. L. R. 671, wherein the facts are strangely similar to those of this case, and the law announced, therefore, peculiarly applicable. Death was the result of a blow struck by defendant with his fist only. He was found guilty of murder. The facts were in substance that defendant struck the deceased after a quarrel, during which defendant asserted to deceased that for two cents he, defendant, would kill him then and there. The court, in discussing the law applicable to the facts, said:

"The circumstances which distinguish murder from manslaughter have been passed upon by this court in many cases. Malice necessary to constitute a killing murder is presumed where the act is deliberate and is likely to be attended with dangerous or fatal consequences. (Citing authorities.) Death or great bodily harm must be the rea-

sonable or probable consequence of the act to constitute
murder. (Citing authorities.) The striking of a blow
with the fist on the side of the face or head is not likely
to be attended with dangerous or fatal consequences, and
no inference of an intent to kill is warranted from the cir-
cumstances disclosed by the proof in this case."

The court recognized, however, that there might be cir-
cumstances surrounding such a homicide from which an
inference of malice would be proper.

From these considerations it appears clearly that the im-
portant matter for the jury to determine was whether,
under all the circumstances of the case, the defendant was
actuated by malice, in law; that is, did he seek to take the
life of Keim. This being so, it was of the utmost import-
ance that the jury be fully and properly instructed upon
that phase of the case.

Objection is made to Instruction No. 4, and the giving
of it is the principal error argued in this case. It laid
down as the rule governing on a question of malice, or in-
tent to kill, the following:

"The court charges you that, if you believe from the evi-
dence, beyond a reasonable doubt, that the defendant as-
saulted and unlawfully struck the said W. G. Keim upon a
vital part of his body with great force and violence, and
that such striking was, on account of the extreme age and
debility of said W. G. Keim, and on account of its force,
violence and aim, an act which in its consequences would
naturally and probably destroy the life of said W. G. Keim,
and did in fact occasion his death, then you may infer that
the defendant was actuated by malice in committing such
act, without further proofs, for malice may be implied
when a person without any considerable provocation does
an act naturally tending to destroy life. The Court does
not say that you must draw the inference of malice from
such conduct. The responsibility is yours to determine
such malice on the consideration of the evidence and the
circumstances of the case, and if you are fully satisfied
from the evidence beyond a reasonable doubt that the de-

fendant assaulted, and unlawfully, wilfully and maliciously struck, bruised and wounded the said W. G. Keim so that he died in consequence thereof, and that such striking was inflicted by the defendant upon the vital parts of the said W. G. Keim's body, in such a manner and with such force, as that the death of the said W. G. Keim was occasioned thereby, then you are justified in presuming an intent to kill on the part of the defendant, on the principle that a man is presumed to intend the natural and probable consequences of his own voluntary act; and if you are thus satisfied from the evidence, beyond a reasonable doubt, of such wilful and malicious act, with intent to kill the said W. G. Keim, by the defendant by the means aforesaid, and that such act did thus occasion his death, then you should find the defendant guilty of murder in the second degree, as charged in the indictment; but you should not find the defendant guilty of murder in the first degree under such circumstances, unless you should be satisfied further from the evidence beyond a reasonable doubt, that such killing was wilful, deliberate and premeditated on the part of the defendant."

The objection is that the instruction assumes matters not in evidence. The testimony showed that the deceased had always been well, never had serious sickness. His son said he was fifty-eight years old. He weighed from two hundred to two hundred ten pounds. The reference, then, to his extreme age and debilitated condition, is wholly without evidence to support it. Indeed, it is directly contrary to the facts as shown in evidence.

That jurors give great weight to every remark by a trial judge is common knowledge, and it has frequently been commented upon in reported decisions. When, then, this instruction was given, it was almost certain to produce in the minds of the jurors an impression that the court regarded the evidence as showing extreme age and debility on the part of the deceased. A juror would naturally conclude that he had overlooked some testimony, and would accept the court's statement as in accord with the facts.

In *Coors v. Brock,* 44 Colo. 80, 96 Pac. 963, this court cites with approval the following from *Fisk v. Greeley Electric Light Co.,* 3 Colo. App. 319, 33 Pac. 70:

"The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous. It is calculated to bewilder and mislead the jury by producing the impression that in the mind of the court, some such state of facts as the instruction supposes, may be inferred from the evidence given, or concealed within it. The authorities upon this proposition are numerous and uniform."

See also, *Johnson v. The People,* 197 Ill. 48, 64 N. E. 286.

There is a further objection to the instruction in that it assumes that the blow was delivered with great force and violence upon a vital part of Keim's body. The only evidence as to the force of the blow is found in the fact that it caused Keim to fall on one knee. There is no evidence to justify the use of the word "vital," and as there was no evidence as to what part of the body would be vital under a blow from the fist, the jury were likely to understand that the court considered that a blow on the cheek was upon a vital part. This is made more important by the repetition in this instruction of the words "vital parts." The jury were told that if they were satisfied that defendant struck, bruised and wounded Keim, "so that he died in consequence thereof, and that such striking was inflicted by the defendant upon the vital parts of said W. G. Keim's body, in such manner and with such force, as that the death of said W. G. Keim was occasioned thereby, then you are justified in presuming an intent to kill on the part of the defendant, on the principle that a man is presumed to intend the natural and probable consequences of his own voluntary act."

By this instruction the jury was in effect told that it could imply malice from the act, and the result. Thereunder, any assault with the fist which results in death,

however unexpected and unintended, might be held to constitute murder.

It is in conflict with the principle upon which it is alleged to be based, i. e. that one is presumed to intend the natural consequences of his act; because all human experience goes to show that death does not ordinarily result from a blow with the fist.

It charges, the defendant with knowledge of the special physical condition, whatever it was, that caused death to follow in this case from an act which does not ordinarily produce that result. Defendant must be judged as to his mental condition, by the facts as they naturally appeared to him at the time of the assault.

This is held in *Murphy v. People, supra,* where the following is quoted with approval from the Massachusetts case:

"In the present case, therefore, if the evidence satisfies the jury that the prisoner, at the time he committed the assault and battery on the deceased, knew, or had reasonable cause to believe, that she was sick and suffering from disease, and was thereby put in such a weak and feeble condition that his attack would endanger her life, or inflict on her great bodily harm, or hasten her death, it would justify the jury in finding implied malice, and convicting the prisoner of murder. But if he was not aware of her sickness and had no reason to suppose that his acts would do her material injury, or any harm beyond that which would be occasioned by similar acts to a person in health, there would be no sufficient evidence of implied malice."

The instruction is supported by no authority, and is in conflict with the great weight of decisions which hold that malice is implied only when the homicide is committed by the use of a dangerous weapon, or instrument, in such a manner as naturally and probably to cause death.

That there may be cases in which malice may be implied, where the homicide was committed by means not ordinarily likely to produce death, has already been indicated. It is a question for the jury, to be determined under proper in-

structions as to the law, and with the facts in evidence alone as the basis of the finding.

To affirm the judgment would be to announce a rule of law in conflict with the overwhelming weight of authority, and establish a principle certain to lead to grave injustice.

The judgment is reversed and the cause remanded for further proceedings in harmony with the views above expressed.

MR. JUSTICE DENISON and MR. JUSTICE BURKE dissent.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE BURKE dissenting:

With firm confidence in my associates I now, as always, dissent from their conclusion with reluctance. Conscious of the general uselessness of minority opinions I would write one only when firmly convinced that some good might thereby be accomplished. Compelled by my judgment and conscience to dissent in the instant case I am unable to ignore the fact that a precedent is here being established which may smooth the path of wrong-doers and embarrass officials charged with the execution of the law and the protection of society. Although handed down en banc the opinion is approved only by a minority of the Justices and its brief statement of facts seems to me to give a wholly erroneous idea of the transaction in question. Believing that I may be able to make the weakness of that precedent apparent, and cause the enemies of peace and good order seeking to hide behind it in the future to feel less secure, I must point out what seems to me its inherent error.

But two questions raised by the forty-six assignments of error in this case are worthy of consideration. They are: First, That death unintentionally resulted from a simple assault and battery, a misdemeanor, and that therefore malice, an essential element of murder, did not in fact exist and could not be implied; second, that for the reason just given, and the further reason that it mis-states the

evidence, instruction No. 4 was erroneous and prejudicial.

Counsel for defendant adopt an ingenious method of attacking this verdict, i. e., instead of directing their investigation first to the crime of murder and the elements thereof, if any, proven in the case before us, they quote our statutes on manslaughter, voluntary and involuntary, numerous authorities defining those offenses in the broadest terms, and then attempt to show that the facts of this case bring it within those definitions, as if the duty devolved upon this court to overturn the verdict if possible. Appellate courts are too prone to overlook the well established principle that all presumptions are in favor of the judgment. If there be a reasonable view of the evidence which will support the finding of the jury we must accept it. That law is as old as jury trials. Following it what do we find?

On Sunday, November 21, 1920, this defendant, accompanied by Cefalu and Calionni, was driving a truck across a crowded viaduct in this city at forty miles an hour. No excuse worthy of the slightest consideration appears for that conduct. He was not only insolently indifferent to the rights and safety of other travelers but was trying to see how close he could come to them without a collision. The deceased, accompanied by his son Thurman E. Keim, the latter's wife and nine year old boy, all of whom were perfect strangers to the defendant, were driving in the same direction in a closed car. Defendant passed them, as he did others, avoiding a collision by the narrowest possible margin. A short distance ahead, and with an interval of time so brief as to be inconsequential, defendant collided with and considerably damaged a Ford car and was engaged in some kind of dispute with the driver thereof when deceased arrived upon the scene. He walked up to the Ford driver, handed him his card and stated that he had witnessed the conduct of defendant, knew him to be at fault in the collision and volunteered, if needed, to appear as a witness. Defendant, apparently infuriated by this offer stripped off his coat and as deceased was walking away from him, pur-

sued and viciously attacked him. He knocked deceased down upon his hand and one knee and continued his assault until Thurman E. Keim arrived upon the scene and interfered. Pushing between defendant and his victim, Keim Jr., received a blow intended for his father. Cefula, Calionni and others were aiding and abetting defendant in this assault and encouraging him to pursue it. Distracted from their victim by the interference of his son they directed their attention to the latter and pursued him, fighting, up a side street until Thurman, thinking himself in grave danger and the assault upon his father no longer threatened, fled. Deceased, dazed and stunned, had taken refuge in the closed car the door of which his daughter-in-law had locked for his protection. As defendant returned from his pursuit of Thurman he discovered Keim Sr., in the car. Crying out, "There he is now, I'll kill him," and repeating during that attack that if he could get him out of there "he would kill the old son of a gun," he broke open the door of the car, grabbed deceased by the legs, pulled him part way out of the car and "tried to break his legs and kill him." To Mrs. Keim's earnest protest he answered, "If you don't shut up I'll bust you in the nose." (The only significance which the majority opinion attaches to this conduct is that defendant was "evidently intending further punishment.") Keim Jr., had sent in a call for the police and it is perfectly apparent that only the approach of the officers put the defendant to flight. After the assault deceased had a cut over his left eye and the right side of his face was bruised, swollen and discolored along the cheek bone and back across the ear, he had a bad headache and was hardly in his right mind. Later that evening he seemed better. The next morning, still suffering from a pain in the head, he went to the police station to make a report, intending thereafter to go elsewhere in the city, but feeling worse returned to his home. At 4 p. m. he was suffering great pain. At 7 he became unconscious, with symptoms of hemorrhage of the brain, and at 7:25 the next morning he was dead, having lived just thirty-eight and

one-half hours after the assault. An autopsy disclosed a ruptured blood vessel in the brain, a hemorrhage inside the brain covering beneath the external bruise, a fracture at the base of the skull and a six ounce blood clot. Deceased was fifty-eight years of age, weighed approximately two hundred pounds, was apparently in good health and had never had any serious illness. Defendant was twenty-five years old, weighed one hundred and ninety-six pounds, was formerly a common laborer, spent two years in the military service during the World War, being a member of the 115th Engineers, and was employed in November, 1920, by the Kistler Stationery Company of Denver whose truck he was driving. After the assault defendant did not re-possess the truck. It was taken in charge by the police. Defendant apparently conscious of the fact that he had committed a serious offense, disappeared down an alley and did not return to his place of employment the following morning. Keeping in concealment he read in the public press the account of the assault and that he was wanted by the police. Tuesday evening he learned in the same way of the death of Keim Sr., and Wednesday noon he gave himself up.

From the undisputed testimony in this case it is perfectly apparent that the death of Keim was directly and solely due to a fractured skull caused by a blow delivered by defendant, and no reasonable man sitting as a juror in this case could, in my opinion, by any possibility reach any other conclusion or have a shadow of a doubt about that one. For the present I will assume, as counsel for the prosecution seem to have done, that the blow referred to was given with the bare fist.

"Murder is the unlawful killing of a human being with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned." Sec. 1622 R. S. 1908.

That the killing in the present instance was unlawful and was effected by one of the means by which death may be occasioned requires no argument. Did malice exist?

"Express malice is that deliberate intention unlawfully

to take away the life of a fellow ·creature which is manifested by external circumstances capable of proof." Sec. 1623 R. S. 1908.

Defendant made every possible effort with the means at hand to destroy the life of deceased. In ·the prosecution of that purpose he never once paused of his own volition. During the attack he twice declared his intention to kill. If the jurors based their verdict upon express malice I think it sustained by the evidence. If not was malice properly implied?

"Malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show an abandoned and malignant heart." Sec. 1624 R. S. 1908.

The provocation which will reduce the grade of the offense from murder to manslaughter must be such provocation as would produce an irresistible passion in a reasonable person. Sec. 1626 R. S. 1908. The passion thus produced must be, "that sudden violent impulse of passion supposed to be irresistible." Sec. 1627 R. S. 1908. There was here then a total absence of provocation.

Do all the circumstances of the killing show an abandoned and malignant heart? The word "abandoned," as here used, means having thrown off all self-restraint and pursuing a lawless and evil course with utter indifference to consequences. "Malignant" means governed by malice, not necessarily malice toward a particular individual but a "reckless disregard of human life proceeding from a heart void of a just sense of social duty and fatally bent on mischief." Michie on Homicide Vol. II, p. 81.

Certainly the conduct of this defendant from the moment he appears upon the scene in this case, driving like an insane man on a crowded public thoroughfare, assaulting and declaring his intention to kill an aged and unoffending citizen, raining upon him blows from which he died, driving off the son of his victim who had interfered to save his father, returning from the pursuit and renewing the attack which had been thus interrupted, breaking open the door of an automobile to accomplish his purpose, until he fled

down an alley to escape the officers who had been summoned reveals in the clearest and most unmistakable light a heart which meets all definitions of abandonment and malignancy.

Malice is a condition of heart and mind concerning which the possessor only can give direct evidence, and proof of its existence must always be circumstantial; hence the statute says it is that deliberate intention to take life "which is manifested by external circumstances capable of proof." Also that it may be implied (as a matter of fact by the jury never as a matter of law by the court) when no considerable provocation appears, or when all circumstances of the killing show an abandoned and malignant heart. The absence of considerable provocation, or the presence of an abandoned and malignant heart, are "external circumstances capable of proof." So despite these labored definitions no real distinction exists. The question is one of fact, the fact must be implied from the proof of other facts and the implication must be by the jury.

If by any process of reasoning we can doubt the existence of malice from the facts hereinbefore recited we may address ourselves to the question of manslaughter.

"Manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture or deliberation whatever. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, or involuntary, in the commission of an unlawful act, or a lawful act without due caution or circumspection." Sec. 1625 R. S. 1908.

"In cases of voluntary manslaughter there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing." Sec. 1626 R. S. 1908.

Defendant makes no claim that deceased attempted to commit upon him any injury, personal or otherwise. There was then no provocation and could be no finding of volun-

tary manslaughter. This brings us to the position taken by counsel for defendant, that the offense here committed was involuntary manslaughter, punishable by not to exceed one year in the county jail.

"Involuntary manslaughter shall consist in the killing of a human being without any intent so to do; in the commission of an unlawful act or a lawful act which probably might produce such a consequence, in an unlawful manner; Provided, always, That where such involuntary killing shall happen in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder." Sec. 1628 R. S. 1908.

If now we concede that this was a killing without intent and in the commission of an unlawful act, i. e., assault and battery as contended by counsel for defendant, still it occurs to me that that assault and battery was committed in such a way and with such force and violence as naturally tended to, and in fact did, destroy human life, hence it must be deemed and adjudged to be murder. I think if we accept plain language applied to a plain statement of facts for the guidance of plain men seeking to do a juror's simple duty, there is no escape from the conclusion and that the foregoing statutes applied to the facts in this case require no aid from judicial precedent. But let us go a step further and examine those precedents.

It is said that malice may never be implied from the use of the bare fists. But malice is not an implication of law but one of fact and facts are implied by the jury not by the court. Wharton on Homicide, pp. 142, 143; *Hill v. People*, 1 Colo. 436, 447; *Kent v. People*, 8 Colo. 563, 571, 9 Pac. 852; *Nilan v. People*, 27 Colo. 206, 211, 60 Pac. 485; *Zipperian v. People*, 33 Colo. 134, 142, 79 Pac. 1018; *Young v. People*, 54 Colo. 293, 311, 130 Pac. 1011; *Craft v. State*, 3 Kan. 450, 486; *U. S. v. King*, 34 Fed. 302, 311.

In the following cases a conviction of murder was sustained where no weapon was used. *State v. John*, 172 Mo.

220, 72 S. W. 525, 95 Am. St. Rep. 513; *M'Whirt's Case,* 3 Grat. (Va.) 566, 46 Am. Dec. 196; *State v. Hamilton,* 1 Houst. Cr. Cas. (Del.) 101; *State v. Hyland,* 144 Mo. 302, 46 S. W. 195.

Cases seeming to justify the contrary position may be found. The only one in this jurisdiction is *Murphy v. People,* 9 Colo. 435, 13 Pac. 528. In that case Mr. Justice Elbert, considering the proposition that malice might not be implied when hands and feet alone were employed as a means of assault, declined to accept it, adopting instead the doctrine as qualified in *Commonwealth v. Fox,* 7 Gray (Mass.) 585. In the Massachusetts case an attempt was made to distinguish between those cases where malice might be implied by the jury and where it might not. Such an attempt must always be futile and can furnish no aid to the profession or the courts because no two cases stand upon the same facts. It is after all a simple question of whether there is or is not, in the judgment of the court, sufficient evidence to support the implication. But in the Murphy case the entire discussion is dictum because there the verdict was manslaughter. The judgment was affirmed and no consideration of the question of implied malice was necessary to a determination of the case. It is therefore no authority on this subject.

In *People v. Crenshaw,* 298 Ill. 412, 131 N. E. 576, 15 A. L. R. 671, quoted in the majority opinion, the conclusion was doubtless correct though I am unable to accept the reasoning. Crenshaw struck but one blow and of his own volition turned and walked away. Such is the basis of the court's declaration that it was clear from the evidence the blow "was not delivered with the intent of causing death." That was a simple case of want of evidence. In the Murphy case our own court, in the Crenshaw case the Supreme Court of Illinois, and in the Fox case the Supreme Court of Massachusetts, recognizes that there may be instances where an assault with the bare fist may be accompanied by facts and circumstances which prove malice. Hence the whole question is one of fact for the jury. It thus seems

to me that the very authorities relied upon in support of the majority opinion refute the conclusion therein that, by the overwhelming. weight of decision, malice may be implied only when the homicide is committed by the use of some dangerous instrument or weapon.

It might be added here that defendant's own evidence, taken in the light of other facts established beyond a reasonable doubt, sustains his conviction. His evidence excludes mutual combat, self defense, or any adequate provocation, and death having resulted from his assault the conclusion of murder is irresistible. *Van Houton v. People,* 22 Colo. 53, 66, 43 Pac. 137.

Before leaving this branch of the case notice must be taken of a very significant bit of evidence, apparently overlooked by counsel for the people, but the full force of which may not have escaped the attention of the jury. Defendant says that as Keim Jr., fled he (McAndrews) took a silver dollar out of his pocket and threw it at him. Standing alone no more foolish, absurd and palpably untrue statement could have been made by him. It is clearly an attempt to minimize and gloss over a very damning piece of evidence given on behalf of the people, i. e., that during McAndrews' attack witnesses who observed him from the time he first struck the deceased until Thurman E. Keim fled from him did not see him put his hand in his pocket, but did see him throw after Keim J., two silver dollars which throughout the assault he had apparently held in his hand. It may well be that the jurors understood that silver dollars gripped in the hand and protruding between the fingers are, in a fistic combat, almost as deadly as "brass knucks" and that for a strong and vigorous man to fracture an opponent's skull with such a weapon is easily within the range of probability. If the jurors believed, as well they might, that such was the weapon which caused death in the instant case, further contention on this branch of the case is foreclosed.

This disposes of the question of law raised under the objection to instruction No. 4. I have yet to examine the con-

tention that the language of said instruction "on account of the extreme age and debility of said W. G. Keim" is prejudicial error because it is the court's statement of a fact unsupported by the evidence, and is improper comment on the evidence. Whether, under the circumstances of a given case, fifty-eight years is or is not "extreme age" is a question for the jurors and this instruction submits it to them. True there is no direct evidence of "debility" but as counsel for defendant themselves contend that death in the instant case was not the natural and ordinary result of a blow, and as no intervening or contributing cause appears, death must have resulted from some latent weakness, defect or debility in deceased. Such was of necessity the position of the defense and the instruction properly submitted that question to the jury for its determination.

It is further said in the majority opinion that this instruction "assumes that the blow was delivered with great force and violence upon a vital part of Keim's body," and "the jury were likely to understand that the court considered that a blow on the cheek was upon a vital part." The court's statement of an admitted fact is never held improper comment. It is no more correct to speak of such a blow on the head as "a blow on the cheek" than it would be to speak of a shot through the heart as "a shot through the skin." If the instruction assumed "force and violence" the facts are not disputed and it is no violent presumption that a blow which knocked down a man weighing two hundred pounds, fractured his skull and caused his death was "delivered with great force."

The majority opinion seems to me a sign board to those who seek to take human life, pointing out to them the means which may be used by one who would be immune from the penalty which the law fixes for murder. It is a warning to those who would fearlessly do their part to put a stop to that reckless driving of automobiles which leaves wrecked vehicles and maimed and lifeless bodies in its wake, that they take their own lives in their hands when they interfere. It is another stone in the wall of unsound

precedent behind which criminals seek to barricade them-selves in their war upon society. We should be diligent in tearing down that barrier, not in strengthening it. The judgment should be affirmed.

I am authorized to state that Mr. Justice Denison con-curs herein.