No. 20562.

GLEN TROY BALLTRIP *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(401 P.2d 259)

Decided April 26, 1965.

110

WILLIAM P. DIXON, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

GLEN TROY BALLTRIP, the defendant below, was convicted of the second degree murder of David Bath, aged three and one-half. Balltrip brings error from the judgment and sentence.

Balltrip and Donna Margret Bath were living as common law husband and wife in a rented house trailer in a trailer lot in Aurora, Colorado. Mrs. Bath had three children by prior marriages: Von 7, Jackie 2, and David. The record discloses that, on December 5, 1961, David was suffering from a severe ear infection, later diagnosed as otitis media. That morning, Mrs. Bath went to work, having left instructions with Balltrip to care for David. During the day, Jackie and David were not obedient, and Balltrip spanked them, using a one inch wide belt.

About 5:00 in the afternoon, a Mr. and Mrs. Allison, residents of a trailer near Balltrip's trailer, observed, through the window of Balltrip's trailer, that Balltrip was swinging his clenched fists at someone. They testified that at that time a child was heard crying, as loudly as a young child can. Mrs. Allison saw Balltrip pick up David from the floor and place him on the couch where she could not see the boy. The fist swinging in the area where the boy was placed on the couch then resumed and the crying began again. The crying gradually weakened and stopped, but Balltrip continued swinging for a short time.

Suddenly Balltrip appeared at the Allisons' door. His hair was disarranged, his face was sweaty and he looked "scared." His first words to them were that the baby was delirious. Balltrip and the Allisons went to Balltrip's trailer. David was lying on the couch with his eyes open, but he did not react to any stimulus.

David was then rushed to a hospital, where the initial

examination showed him to be in a semi-comatose state, with an ear infection and a 106 degree fever. Also observed were bruises on the right mastoid area, back of the head, and on the cheek, and one inch wide welts on both arms, buttocks and both legs. Mrs. Bath testified that the bruises and welts had not been present when she left for work that morning. The efforts of the best medical specialists available were unable to save David's life. He died on December 9.

At the trial, the medical testimony indicated that David's death was attributable to external head injuries, and not to otitis media or the injuries on the child's body. The defense was that Balltrip had not hit David on the head, although in a statement to the police and once on the witness stand, he admitted "smacking" the boy on the face. It was contended by Balltrip that if a head injury caused the death, it must have been received when David fell off the couch on which he was playing and struck his head on the stove. However, Von Bath, one of the defendant's step-sons, testified that it was Jackie and not David, who fell off the couch near the stove. The prosecution maintained that Balltrip had struck David on the head, and that the blows caused his death.

 The first of Balltrip's numerous assignments of error is that the trial court erroneously denied his several motions for bills of particulars. In each of the motions a list of injuries inflicted upon David, and their relationship to his death, was sought. The law is well settled that it is within the trial court's discretion to grant or deny motions for bills of particulars, and its action will not be disturbed on writ of error in the absence of an abuse of discretion. *Stewart v. People,* 86 Colo. 456, 283 Pac. 47. There is no abuse of discretion in denying a motion for a bill of particulars where the information sufficiently advises the defendant of the charge he is to meet. *Johnson v. People,* 110 Colo. 283, 133 P.2d 789; 34 Rocky Mt. L. Rev. 14.

██ Basically, the purpose of a bill of particulars is to

define more specifically the offense charged. It is not its purpose to disclose in detail the evidence upon which the prosecution expects to rely. *Fischer v. United States* 212 F.2d 441 (10th Cir. 1954). The record here does not show an abuse of discretion. Nothing in the record indicates that the defendant was taken by surprise in the trial, or that his rights were prejudiced by the court's refusal to require that the information be furnished. The information here sufficiently advised Balltrip of the charge he was to meet. We accordingly hold that the trial court committed no error.

▉ Balltrip next argues that the setting of bail at $50,000 was, in effect, a denial of bail. This question is not properly raised on writ of error to a conviction. *Corbett v. People,* 153 Colo. 457, 387 P.2d 409; *State v. Sheppard,* 100 Ohio App. 345, 128 N.E.2d 471, *aff'd.,* 165 Ohio St. 293, 135 N.E.2d 340, *cert. denied,* 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119. Balltrip's proper remedy to the question of the reasonableness of the amount set as bail was by way of original proceedings in this Court. See *Altobella v. District Court,* 153 Colo. 143, 385 P.2d 663.

▉ Moreover, under the majority rule of Colo. R. Crim. P. 46(b), the power of deciding the amount of bail is within the judicial discretion of the trial court; its decision will not be disturbed when the question is properly raised, except in a clear case of abuse of discretion. 4 Wharton, *Criminal Law and Procedure* §§ 1819, 1820 (12th ed. 1957).

The third argument presented by Balltrip is that the trial court erred when it allowed the District Attorney to endorse Drs. George Ogura and Homer McClintock as additional witnesses three days prior to trial. It is transparently clear from the record that the testimony of these two doctors added nothing to the testimony of a Dr. Miller, whose name had been originally endorsed on the information.

▉ The applicable Colorado rule is that granting leave for the endorsement of witnesses is discretionary with

the trial court, and, in the absence of a request for a continuance or a showing of surprise, does not constitute reversible error. *Gorum v. People,* 137 Colo. 1, 320 P.2d 340. Here Balltrip asked for and obtained a two day continuance because of the endorsement of the new witnesses. Balltrip thereafter appeared for trial on the appointed day and made no request for further continuances. He cannot, therefore, now raise an issue here with regard to the endorsement of the witnesses.

■ Mrs. Bath, who was endorsed on the information as Donna Margret Balltrip, was called as a witness and allowed to testify. The defendant objected on the ground that, under C.R.S. '53, 153-1-7, a wife cannot be a witness against her husband without his consent. He reasserts that argument here, but it is without merit. The murder by one spouse of the other's child is also a crime committed by one spouse against the other, so the husband-wife privilege under C.R.S. '53, 153-1-7 does not apply. *O'Loughlin v. People,* 90 Colo. 368, 10 P.2d 543.

■ The defendant took the witness stand in his own behalf. He testified that David had fallen off the couch, and was then asked, "What did he say?" The District Attorney objected on the ground that Balltrip's answer would be hearsay, and the trial court sustained the objection. The defendant's offer of proof showed that Balltrip would testify that David said, "I need an aspirin. I hurt may head." The defendant argues that the boy's statement was admissible as part of the res gestae, and that it was error to exclude it. The testimony, however, came in at another time during the trial, when Detective Boam testified that Balltrip told him that the child had fallen off the couch and struck his head on the stove. Thus, the error, if any, was not prejudicial to the defendant. Since the defendant cannot sustain the burden of showing prejudice, there is no ground for reversal. *Miller v. People,* 141 Colo. 576, 349, P.2d 685, *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 75.

The defendant next argues that it was error to pre-

vent his brother, Roy Balltrip, from testifying what the young boy, Von, had said to him concerning the events of December 5. On December 6, Von was taken to Roy Balltrip's home in Climax, Colorado. During his stay there, he was asked repeatedly about the happenings of December 5. The defendant offered to prove by Roy Balltrip that, in answer to Roy's questions, Von had said that Balltrip had not hit David on the head, and that David had hurt himself by falling off the couch onto the stove. It is now contended that the testimony was admissible on two grounds: (1) as part of the res gestae and (2) as a prior contradictory statement, because Von had testified that Jackie, not David, had fallen off the couch and struck his head on the stove.

The testimony, clearly hearsay, was properly excluded. To be part of the res gestae, the statement must be the event speaking for itself, through the instinctive words of the speaker, not the words of the speaker when narrating the event. *Baney v. People,* 130 Colo. 318, 275 P.2d 195. From the offer of proof, it is evident that Von's statements were in response to questions asked; they were neither voluntary nor spontaneous; they were made on the day after the event, and consequently do not meet the requirements of res gestae. The trial court ruled properly in excluding this testimony.

Nor was the offered testimony proper for the purpose of impeaching Von. Before a party can prove that a witness for the adverse party made statements prior to trial in conflict with his testimony in court, a foundation must be laid to afford the witness an opportunity to deny, admit, or explain the circumstances under which the purported statement was made. *Alden v. Watson,* 106 Colo. 103, 102 P.2d 479; *Coplin v. People,* 67 Colo. 17, 185 Pac. 254. No such foundation was laid by Balltrip. The testimony was therefore not admissible to show the witness's prior contradictory statement.

Balltrip's next argument is that certain testimony of Mrs. Bath's was "so inflamatory, non-respon-

sive, and outside the issue of the case" that his motion for a mistrial should have been granted. The testimony objected to occurred when Mrs. Bath related that she once had stopped Balltrip from beating Jackie with a shoe, and that Balltrip threatened to beat her. Whether to declare a mistrial rests in the sound discretion of the trial court. The jury was admonished by the trial judge to disregard the improper remarks, and, in our view, there was no abuse of discretion in refusing a mistrial under the circumstances of this case. *Hopper v. People,* 152 Colo. 405, 382 P.2d 540.

Balltrip objects also to the court's Instruction No. 5, which provided that the presumption of innocence continued until "overthrown" by evidence sufficient to exclude all reasonable doubt of his guilt." Balltrip contends that the wording is improper, and that the trial court should have given his tendered instruction, which states that the presumption "accompanies him throughout the trial, and goes with the jury in their retirement and deliberation in the jury room." The instruction given satisfied the rule, early set forth in Colorado in *Young v. People,* 47 Colo. 352, 107 Pac. 274, that the jury be instructed that the presumption prevails throughout the trial, until the defendant's guilt is established by the testimony beyond a reasonable doubt.

The defendant next argues that the court's Instruction No. 11, on involuntary manslaughter, was erroneous. The instruction was a verbatim copy of C.R.S. '53, 40-2-7. The defendant contends that the instruction given, unlike tendered Instruction No. 3, omits the words which appear in C.R.S. '53, 40-2-4 describing involuntary manslaughter as the unlawful killing of a human being without malice in the commission of a *lawful act without due caution or circumspection.* Instruction No. 7 given by the court is a recital of C.R.S. '53, 40-2-4 and incorporates the words which Balltrip contends should have been included in Instruction No. 11. Instructions must be read as a whole, and if, when read as a whole,

they do, as here, adequately inform the jury of its duty and the law, there is no reversible error. *Martz v. People,* 114 Colo. 278, 162 P.2d 408.

▬▬▬ Another ground for reversal urged here is that Instruction No. 18, on circumstantial evidence, is the same as the one which resulted in the reversal of *Abeyta v. People,* 145 Colo. 173, 358 P.2d 12. We do not, however, feel that the rule of that case requires the reversal of this case. It was central to the *Abeyta* case that the proof was wholly circumstantial. That is not the situation here. In view of the testimony of the Allisons that they saw Balltrip put the baby on the couch and then swing his fists in the area where he had put the baby, and that they heard a baby crying as loudly as it could; in view of Balltrip's admissions that he spanked David; in view of the testimony of the bruises on David's head; in view of Balltrip's admissions in his written statement and his testimony at the trial, that he had hit the boy on the head between 5:00 and 6:00 in the afternoon; and in view of the medical testimony that the cause of death was head injuries, it is clear that there is substantial direct evidence of the crime. Cf. *Ives v. People,* 86 Colo. 141, 278 Pac. 792. Ample competent direct evidence supports the conviction, without resort to the circumstantial evidence.

Thus, the circumstantial evidence instruction did not, as distinguished from *Abeyta,* become "a most important factor in the case." We once again strongly disapprove the wording of the given instruction, but under the particular circumstances presented here the giving of this instruction did not constitute reversible error.

▬▬▬ Balltrip also argues that giving Instruction No. 9 constituted reversible error. The second paragraph reads:

"If you should find beyond a reasonable doubt that death ensued from an attack made with the hands, or otherwise, upon an infant of tender years, you are then instructed that under such circumstances malice may be implied."

The defendant contends that the instruction assumes facts not in evidence. The facts previously set forth show that this argument is patently without merit.

He contends also that Instruction No. 9 is an incorrect statement of the law in that malice may not be implied unless the homicide is committed by the use of a dangerous weapon or instrument, in such a manner as would naturally and probably cause death; and that the hands and feet are not ordinarily considered to be such weapons. Balltrip cites *McAndrews v. People,* 71 Colo. 542, 208 Pac. 486, in support of his contention.

Instruction No. 9 is derived from the following dictum in *Murphy v. People,* 9 Colo. 435, 13 Pac. 528:

"* * * If, therefore, death should ensue from an attack made with the hands and feet only, on a person of mature years, and in full health and strength, the law would not imply malice, because, ordinarily, death would not be caused by the use of such means. *But the inference would be quite different if the same assault and battery were committed on an infant of tender years, or upon a person enfeebled by old age or worn out with disease. * * *"* (Emphasis supplied.)

Balltrip's statement of the rule may be true as a general principle, but the two exceptions appearing in the *Murphy* dictum were adopted into the Colorado law by *Milosevich v. People,* 119 Colo. 56, 199 P.2d 895, which involved "a woman past middle age afflicted with heart trouble and often sick." This Court there pointed out that the age and physical condition of the perpetrator and his victim may make the general rule laid down in *McAndrews* wholly inapplicable. Under the circumstances of this case, the given instruction was proper.

Balltrip's next argument is that the jury's verdict is not supported by ample competent evidence. Suffice is to say that although there was conflicting testimony, and some witnesses contradicted themselves, the evidence was clearly competent to support the verdict. It is the duty of the jury to resolve conflicts in the evi-

dence, and to determine the weight of the witnesses' testimony. We cannot interfere with their determination of the facts as long as it is supported by competent evidence. *Duran v. People,* 147 Colo. 491, 364 P.2d 206.

■ The medical testimony indicated that the head injuries could have resulted from a blow or blows, or a fall or falls. The defendant argues that the case must be therefore reversed, because the proof rests in the disjunctive. *Eckhardt v. People,* 126 Colo. 18, 247 P.2d 673, is cited as authority for this argument, but it is clearly not in point. There the physiological cause of the death was purely speculative. The sole medical testimony was that the death could have occurred from a blow, or from advanced arteriosclerosis. The medical testimony here was clear that David died from head injuries. How the head injuries occurred on the basis of the conflicting testimony in the record here was a question for the jury.

■ The defendant's last argument is that the conviction rests on inferences drawn from inferences, contrary to the prohibitions of *Tate v. People,* 125 Colo. 527, 247 P.2d 665. This is not accurate. Evidence in the record, sufficient to sustain the verdict, *directly* linked the defendant with the injuries which caused the death of David. This negates Balltrip's argument that the conviction rests on inferences drawn from inferences.

The judgment is affirmed.