The **PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**James John Lyle JEFFERS,**
**Defendant-Appellant.**

**No. 83SA180.**

Supreme Court of Colorado,
En Banc.

Oct. 9, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Philip E. Lowery, P.C., Philip E. Lowery, Denver, for defendant-appellant.

ERICKSON, Chief Justice.

The defendant, James Lyle Jeffers, appeals his convictions for felony theft and the unlawful practice of medicine. Sections 18–4–401, 8 C.R.S. (1978); 12–36–106 and 12–36–129, 5 C.R.S. (1978). The defendant asserts three grounds for reversal of his conviction: First, he claims the trial court erred in not dismissing the theft charges because the prosecution's bill of particulars was insufficient. Second, he asserts that the unlawful practice of medicine statute is unconstitutionally vague and overbroad. As a third ground, he contests the trial court's ruling which admitted as evidence a tape which was partially inaudible. We affirm.

I.

The defendant founded and operated a clinic in Englewood, Colorado, known as the General Orthotherapy Clinic. On June 23, 1981, Brian Bevis, an undercover detective for the Arapahoe County police department, went to the defendant's clinic. Detective Bevis wore a hidden listening and recording device that was monitored by other detectives in a parking lot outside the clinic.

Bevis informed the defendant that he had not been "feeling well" and that he had been suffering from a "groin problem." [1] After inquiring into Bevis' medical history, the defendant gave the detective a series of tests. In one test, the defendant had Detective Bevis extend his right arm while holding various containers of food against his stomach with his left hand. The defendant then pressed down on the detective's extended arm. The defendant described the procedure as a test for food allergies. After performing various other "tests," the defendant diagnosed Bevis' condition as "diverticulitis," and recommended that he undergo a series of "colonic irrigation" treatments.[2] During the examination the defendant informed Bevis that he had a master's degree in sociology and a Ph.D in psychiatry.[3] The detective was charged and paid $35 for the services.

On July 24, 1981, felony charges were filed in Arapahoe County District Court charging the defendant with unlawfully practicing medicine and felony theft. The information charged that the defendant had knowingly recommended, prescribed, and administered medical treatment without a valid license to practice medicine. Each count related to a particular victim that the defendant had "treated" and set forth the approximate date of the occurrence.

The defendant subsequently filed a motion for a bill of particulars requesting that the prosecution set forth the specific dates and times each alleged offense was committed. In response, the prosecution filed a bill of particulars which stated:

The District Attorney is unable to provide a more specific date and time beyond what is alleged in the information, as the alleged thefts took place over a period of time, and the victims are unable to specify the exact dates and times they had contact with the Defendant.

As to the method by which these thefts were committed, the District Attorney will be proceeding under the provisions of 18–4–401(1)(a), C.R.S.1973.

The defendant moved to dismiss the theft counts claiming that the prosecution's bill of particulars was insufficient and unresponsive to his requests. The court denied defendant's motion. A jury found the defendant guilty of seven counts of unlawfully practicing medicine and eight counts of felony theft.

## II.

■ The defendant asserts that the prosecution's bill of particulars was unresponsive and that the trial court erred by not dismissing the theft charges. The defendant's motion for a new trial did not challenge the sufficiency of the bill of particulars. Crim.P. 33(a). Accordingly, the defendant's conviction must be affirmed unless "plain error" occurred which reasonably contributed to the defendant's conviction. Crim.P. 52(b). *Ramirez v. People,* 682 P.2d 1181 (Colo.1984); *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972).

■ Section 18–4–401(6) states that "[t]he prosecuting attorney [in theft cases] shall at the request of the defendant provide a bill of particulars." The purpose of a bill of particulars is to enable a defendant to adequately prepare a defense when the information does not provide a basis for answering the charge. *People v. District Court,* 198 Colo. 501, 603 P.2d 127 (1979); *Balltrip v. People,* 157 Colo. 108, 401 P.2d 259 (1965). A bill of particulars need not provide in-depth disclosure of the prosecution's evidence. *Balltrip,* 157 Colo. at 113, 401 P.2d at 262. Here, the prosecution's failure to provide a more detailed bill of

---

1. Detective Bevis actually had a condition known as "epididymitis." Four medical doctors had concurred in this diagnosis and one of them had prescribed antibiotics and pain pills.

2. Colonic irrigation consists of inserting a tube into the patient's rectum and pumping warm water through the hose to rinse or irrigate the patient's lower colon. At trial, an expert witness for the prosecution testified that "colonic irrigation" is no longer performed in hospitals in the United States.

3. The defendant actually had a master of arts degree in "communications, speech and drama."

particulars does not constitute grounds for reversal. The information, by itself, provided the defendant with adequate notice of the charges. Each count of the information specified the victim's name, the alleged crime committed, and the approximate date that the alleged acts occurred. *See, e.g., People v. Rubanowitz,* 688 P.2d 231 (Colo. 1984); *People v. Wolfe,* 662 P.2d 502, 504 (Colo.App.1983).[4] Since the information properly charged the defendant with the crimes set forth in each of the multiple counts, the error asserted is without merit.

### III.

The defendant claims that his convictions for unlawfully practicing medicine should be reversed because section 12–36–106 is unconstitutionally vague and overbroad. We reject the defendant's claim that the statute is unconstitutionally vague and hold that the defendant lacks standing to raise the overbreadth issue.

### A.

■ A statute which gives adequate warning of the activity it proscribes and sets forth standards for those who must apply it is not impermissibly vague. To be unconstitutional, a statute must use language so vague that persons of common intelligence can not understand its meaning. *People v. Enea,* 665 P.2d 1026, 1027 (Colo.1983); *People v. Beruman,* 638 P.2d 789 (Colo.1982). The defendant argues that the statute's general language creates the potential for arbitrary and discriminatory enforcement. We find this argument unpersuasive.

■ When read as a whole, section 12–36–106 adequately defines those activities which constitute the "practice of medicine." Section 12–36–106(1) describes the "practice of medicine" using language which persons of ordinary intelligence can understand. In addition, section 12–36–106(3) expressly excludes several forms of "medical practice" from the ambit of section 12–36–106(1)(b), and further clarifies those activities which constitute the "practice of medicine." When read in its entirety, section 12–36–106 is sufficiently detailed to allow individuals engaged in the "healing arts" to conform their conduct to the law.[5]

### B.

■ The defendant also maintains that section 12–36–106 is unconstitutionally overbroad and could "chill" forms of speech that are protected by the United States and Colorado constitutions.[6] We do not reach the merits of his overbreadth claim because the defendant lacks standing to raise the issue. In the past, both this court and the United States Supreme Court have permitted challenges to the facial overbreadth of laws that may have a chilling effect upon freedom of expression, even though such laws could be constitutionally applied to the parties asserting the challenge. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *City of Lakewood v. Colfax Unlimited Ass'n., Inc.,* 634 P.2d 52 (Colo.1981); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982 (Colo.1981). The rules of standing, however, are expanded only cautiously and in exceptional cases:

[F]acial overbreadth adjudication is an exception to our traditional rules of practice and ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the

4. *Rubanowitz* and *Wolfe* recognize the difficulty of precise "charging" in cases where the theft took place over a period of time.

5. Section 12–36–106, 5 C.R.S. (1978), provides in pertinent part:
   Practice of Medicine defined—exemptions from licensing requirements. (1) For the purpose of this article "practice of medicine means:
   . . . .

(b) Suggesting, recommending, prescribing, or administering any form of treatment, operation, or healing for the intended palliation, relief, or cure of any physical or mental disease, ailment, injury, condition, or defect of any person with the intention of receiving therefore, either directly or indirectly, any fee, gift, or compensation whatsoever; . . . .

6. U.S. Const. amend. I; Colo. Const. art. II, § 10.

State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.... To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917, *quoted in City of Lakewood*, 634 P.2d at 57; *Marco Lounge*, 625 P.2d at 987; *see also Bolles v. People*, 189 Colo. 394, 541 P.2d 80 (1975).[7]

■■■■ Here, the statute under attack is a criminal statute that deals exclusively with harmful, constitutionally unprotected conduct, and has no discernible effect on speech or expression. Pursuant to its police power, Colorado may define and regulate the practice of medicine and may prohibit unlicensed individuals from providing medical treatment. *See, e.g., Dixon v. Zick*, 179 Colo. 278, 500 P.2d 130 (1972); *Lipset v. Davis*, 119 Colo. 335, 203 P.2d 730 (1949). The practice of medicine itself is not protected by the first amendment. Therefore, reasonable regulation of medical practice does not conflict with first amendment protections. *See, e.g., Garcia v. Texas State Board of Medical Examiners*, 384 F.Supp. 434 (W.D.Texas 1974), *aff'd*, 421 U.S. 995, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975). The unlawful practice of medicine statute thus has a broad, legitimate scope.

In contrast, we have not been able to discern any specific overbroad applications, substantial or otherwise, that this statute may have. Under these circumstances, we refuse to consider the hypothetical chilling effect this statute may have in unknown future cases. *See People v. Stage*, 195 Colo. 110, 575 P.2d 423 (1978) (overbreadth challenge not considered where no showing of threat to first amendment rights).

### IV.

During the trial, the court admitted as evidence, over the defendant's objection, partially inaudible tape recordings of a conversation between the defendant and Detective Bevis. The defendant claims that the admission of inaudible segments of the taped conversation is reversible error because the recordings were unfairly prejudicial. We disagree.

■■■■ The trial court has broad discretion in determining the admissibility of tape recordings, and their admission will not be disturbed on appeal in the absence of an abuse of discretion. *Alonzi v. People*, 198 Colo. 160, 597 P.2d 560 (1979); *People v. Quintana*, 189 Colo. 330, 540 P.2d 1097 (1975). In *Alonzi*, we held that the mere presence of inaudible segments in a tape recording does not render the entire recording inadmissible. The defendant must prove that the inaudible segments made the tapes "untrustworthy." 198 Colo. at 164, 597 P.2d at 563. In the present case, the defendant has failed to establish how the inaudible segments affected the tapes' reliability. The defendant does not challenge the tapes' authenticity nor does he

---

7. We have sometimes stated that standing to assert an overbreadth challenge is limited to those whose conduct is directly affected by the overly broad reach of the statute. *People v. Allen*, 657 P.2d 447 (Colo.1983); *People v. Bridges*, 620 P.2d 1 (Colo.1980); *People v. Weeks*, 197 Colo. 175, 591 P.2d 91 (1979). As we pointed out in *Marco Lounge*, however, "it may be questioned whether [this rule] ... is fully consistent with the controlling authority of *Broadrick v. Oklahoma, supra; Bigelow v. Virginia*, [421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975)], as well as with *Bolles v. People, supra*." 625 P.2d at 986, n. 5. *Broadrick* specifically rejected the idea of limiting overbreadth standing to those personally affected, holding that, under the conditions outlined in the text above, "[l]itigants ... are permitted to challenge a statute not because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." 413 U.S. at 612, 93 S.Ct. at 2916. In *Bigelow*, the Court likewise permitted challenges based upon hypothetical threats to speech, so long as such threats are shown to be specific and objective. 412 U.S. at 816–17, 95 S.Ct. at 2229–30.

claim that the tapes deleted exculpatory statements. Under these circumstances, the court did not abuse its discretion by admitting the recordings into evidence. No prejudice has been shown.

Accordingly, we affirm the district court.

LOHR, J., does not participate.