No. 26181

**The People of the State of Colorado v. Robert Quintana**

(540 P.2d 1097)

Decided September 15, 1975.                    Rehearing denied October 20, 1975.

J. D. MacFarlane, Attorney General, Edward G. Donovan, Solicitor General; John P. Moore Attorney General, John E. Bush, Deputy, James W. Wilson, Assistant; Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellee.

Flynn Kimerer Thinnes & Galbraith, John J. Fly, Tom Galbraith, Dennis Blewitt, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This opinion is announced simultaneously with *People v. Ciari,* 189 Colo. 325, 540 P. 2d 1094 and *People v. Broncucia,* 189 Colo. 334, 540 P.2d 1101.

The defendant was convicted of perjury and conspiracy to commit perjury. He and Ciari were tried together. They filed separate appeals and, while these were consolidated for oral argument, we write separate opinions. We affirm.

The gist of the evidence against the defendant is: that the defendant and others agreed to testify falsely at an extradition hearing of one Griswold; that extradition of Griswold was sought by Nevada on criminal charges resulting from an alleged "diamond switch" there committed by Griswold; that, in exchange for defendant's testimony, Griswold agreed to testify at an apparently unrelated hearing involving the defendant; that Quintana met with Griswold, Tomeo, and several other alleged conspirators before the extradition hearing; and that contacts between them continued up to the time of that hearing.

I.

Defendant's major contention is that there was a variance between the charge contained in the indictment and the proof. He asserts that although one conspiracy, involving all the alleged perjurers, was charged, the prosecution proved at least four conspiracies, only one of which involved the defendant. He contends that this variance resulted in prejudice

to him. Although the evidence would have been admissible in the proof of a single conspiracy, at least some of the evidence would have been inadmissible in the proof of multiple conspiracies. He relies upon *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The conspiracy in *Kotteakos* was interpreted to be a "wheel," or "spoke" conspiracy. One Brown applied for loans under the National Housing Act on behalf of several individuals who did not know or have any contact with one another. The court found that, though only one conspiracy was charged, eight separate conspiracies with similar objects were made out by the evidence. The court speaking of *Kotteakos* in a later case stated:

"Each loan was an end in itself, separate from all others, although all were alike in having similar illegal objects. Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme. . . . There was no drawing of all together in a single, over-all, comprehensive plan." *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1974).

■ The facts of the instant case are otherwise. Although this too is clearly a spoke conspiracy, that fact does not preclude the finding of one conspiracy. *See W. LaFave and A. Scott, Criminal Law* § 62 (1972). Here, there was a single over-all plan with a common object — to prevent the extradition of Griswold. The success or failure of the conspiracy depended upon the successful linkage of each member's testimony. The perjury of one person was not and could not have been an end in itself as in *Kotteakos, supra.*

The trial court, in this case, considered *Kotteakos*, but found that the testimony was sufficient to establish circumstantially a single conspiracy to commit perjury involving all these defendants. *See also People v. Incerto*, 180 Colo. 366, 505 P.2d 1309 (1973).

■ The defendant stresses that he was unfamiliar with Ciari's testimony, and that he did not meet all the alleged coconspirators. This alone does not merit a reversal of the trial court's finding of one conspiracy. The United States Supreme Court in *Blumenthal v. United States, supra*, stated:

"We think that in the special circumstances of this case the two agreements were merely steps in the formation of the larger and ultimate more general conspiracy. In that view it would be a perversion of justice to regard the salesmen's ignorance of the unknown owner's participation as furnishing adequate ground for reversal of their convictions. Nor does anything in the *Kotteakos* decision require this. The scheme was in fact the same scheme; the salesmen knew or must have known that others unknown to them were sharing in so large a project; and it hardly can be sufficient to relieve them that they did not know, when they joined the scheme, who those people were or exactly the parts they were playing in

carrying out the common design and object of all. By their separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal.

"The case therefore is very different from the facts admitted to exist in the *Kotteakos* case. Apart from the much larger number of agreements there involved, no two of those agreements were tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result. . . . There was no drawing of all together in a single, over-all, comprehensive plan."

*See also, United States v. Jackson*, 482 F.2d 1167, *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1973); and *Anderson v. Superior Court*, 78 Cal. App. 2d 22, 177 P.2d 315 (1947).

In our view there was no fatal variance.

## II.

■ Defendant next argues that he was prejudiced by the refusal of the trial court to grant a severance. He cites the American Bar Association Standards Relating to Joinder and Severance, § 2.3(b)(1) (1968) approved by this court in *People v. Maestas*, 183 Colo. 378, 517 P.2d 461 (1973), in which it is stated:

"The necessity of severance is tested by the standard that it must be 'deemed appropriate to promote a fair determination of the guilt or innocence of a defendant.' That abstract principle, in turn, is tested by the following: (1) Whether the number of defendants or the complexity of the evidence is such that the jury will probably confuse the evidence and law applicable to each defendant; (2) whether evidence inadmissible against one defendant will be considered against the other defendant despite admonitory instructions; (3) whether there are antagonistic defenses."

■ Only two defendants were tried in this case. Though the evidence was complex (because of the rule that acts and declarations of conspirators in furtherance of the conspiracy will be considered acts and declarations of all), most of the evidence would have been admissible in a separate trial of the defendant. The evidence which was admissible only against Ciari was accompanied by the judge's admonitions to the jury to that effect. It must be presumed, absent a showing to the contrary, that the jury heeded the instructions. *People v. Jacobs,* 179 Colo. 182, 499 P.2d 615 (1972).

Further, although the defenses presented by the two defendants were independent of one another, they were not antagonistic. We fail, therefore, to find the requisite prejudice to justify a reversal for failure to grant a severance.

## III.

It is argued that evidence was erroneously admitted which irreparably prejudiced the defendant. Particularly, he asserts that the tape recording offered into evidence and admissible only against Ciari was prejudicial to him, Quintana. The argument was made that the tape was inaudible and severely edited, and that its admission constituted reversible error. We cannot agree.

■ Having listened to the taped conversation between Ciari and Tomeo, we conclude that it was properly admitted. Although parts of the tape were inaudible, this does not render the entire recording inadmissible. The decision as to the admissibility of the recording is one that rests in the sound discretion of the trial court. *See State v. Slater*, 36 Wash.2d 357, 218 P.2d 329 (1950). There was no abuse of discretion in the trial court's decision to admit the recording.

■ The editing of the tape was performed at the request of defense counsel, and no objection based upon editing was made at any time during trial. Absent a showing of plain error, which does not exist here, this court will not consider on review trial court rulings which are not the subject of contemporaneous objection. *Messer v. People*, 65 Colo. 435, 176 P. 828 (1918).

IV.

The remaining issues raised by the defendant are without merit.

Judgment affirmed.

MR. JUSTICE ERICKSON recuses himself.