**No. 26889**

**The People of the State of Colorado v. William Eugene Odneal**

(559 P.2d 230)

Decided January 31, 1977.

Robert L. Russel, District Attorney, Jon C. Thomas, Deputy, for plaintiff-appellee.

Clinton M. Cole, R. Dennis Lambrecht, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant William Eugene Odneal appeals his conviction for attempted receipt of stolen property, section 18-4-401, C.R.S. 1973.[1] We find that prejudicial error occurred, and we therefore reverse appellant's conviction and remand for a new trial.

Appellant, a former Colorado Springs police officer, owned and operated two pawn shops in that city. On August 27, 1973, David Belanger entered one of appellant's pawn shops. He and appellant retired to an office located near the back of the store. There, Belanger produced a diamond ring which he asked appellant to buy. Belanger testified that he told appellant the ring was stolen. After some discussion, appellant bought the ring for $200. Within five minutes after Belanger left the store, appellant was placed under arrest.

Unknown to appellant, Belanger was acting at the direction of the Colorado Springs Police Department. The police had instructed Belanger to represent the ring as stolen and attempt to sell it to appellant. Sergeant Mays had concealed a transmitter microphone and antenna on Belanger's person. The purpose of this device was to transmit Belanger's conversation with appellant to Sergeants Short and Mays, who were in an unmarked police surveillance vehicle parked across the street. They monitored the conversation while a battery-powered cassette tape recorder purported to

---

[1] Now section 18-4-401, C.R.S. 1973 (1976 Supp.).

record it. Sergeant Thiede, stationed at the rear of the store, also monitored the conversation by radio, but admittedly did not hear all of it.

Both during the hearing on appellant's motion to suppress the tape recording and at trial, the officers involved testified that the tape was neither complete nor wholly intelligible. Sergeant Short testified that static from other radios, vehicle traffic, and ignition noise obliterated statements by appellant and Belanger. Sergeant Mays cited neon signs and the sound of a mynah bird in the background as causing interference which occurred, in his words, "quite often."

An electronics expert, who was experienced in recording and editing tapes, testified as to the causes of the recording deficiencies in the tape recording. He estimated that fifty percent of the tape was usable and the other fifty percent was in the "gray area." Neither Short nor Mays made notes of the conversation as they heard it. Sergeant Thiede testified to a great deal of background noise and admitted that he did not monitor the entire conversation.

The trial judge personally listened to the tape to evaluate it. In ruling on the motion to suppress, the court found "* * * Parts of the conversation are blurred and parts of the tape are inaudible and unintelligible due in part by what I understand to be city utility trucks, transmitters located in the vicinity, and, also, by reason of engines of passing motorists." The court then ruled:
"I think the defendant presents a strong case * * * that the tape is too blurred and unintelligible to be presented to the jury, and that certain material portions may be omitted, which they would not be able to hear, of this purported conversation, and, for that reason, the Court is going to sustain their objection to the tape being admitted on the People's case in chief, because of that fact."
The court reserved ruling on whether the tape could be used for impeachment.

Early in the trial when the district attorney re-offered the tape in evidence, the court repeated its ruling, and later excluded a purported transcript of the tape on the same grounds, allowing its use only to refresh recollection.

The uncontroverted evidence at trial established that at the time of the alleged offense the Colorado Springs Police Department had requested all pawnbrokers to attempt to detain people whom they suspected of selling stolen goods and then call the police. Failing that, the pawnbrokers were instructed to buy the goods and then notify the police. Appellant had followed this procedure on several other occasions and claimed he had intended to do so on August 27, before his arrest.

Appellant's theory of defense was that he was carrying out the police policy in regard to purchasing stolen goods and that he was entrapped into attempting to buy the purportedly stolen diamond ring.

During the People's rebuttal, the prosecutor moved to admit the tape to rebut appellant's entrapment claim and for impeachment. The court admitted the tape,

"for the purpose of hearing the tone of voices, the inflection in the voices of these two people, and the sequence of events as to what transpired when — Assuming the jury can understand it."

In so ruling, the court again described the tape as "poor," "blurred" and "inaudible." The jury was cautioned that "this tape certainly does not purport to show all of the conversation between the two parties * * *."

Because the cassette recorder was powered by batteries which lost power while recording, the tape speed varied throughout the conversation. To control the speed and quality of the sound, the tape was played for the jury by use of a rheostat. The deputy district attorney operated the rheostat.

■ We believe the district court ruled correctly when it initially excluded the tape and committed prejudicial error in recanting its earlier ruling and admitting it for rebuttal. In granting appellant's motion to suppress, the court characterized the tape as blurred, unintelligible and incomplete. Nothing happened during trial to improve the tape's quality. In fact, the officers who monitored the conversation by radio testified that their reception was clearer than the recording. They testified at length to their recollection of the conversation, refreshed by a transcript of the tape which they had prepared. The People thus had ample opportunity to introduce the conversation as the officers overheard it.

The testimony and the court's own rulings showed the tape to be inherently unreliable for the purpose for which it was ultimately admitted. It clearly did not constitute impeachment, as the court ruled that appellant did not deny any of his statements related by the officers. In view of the admittedly inherent deficiencies in the tape recording, and its poor quality, it could not accurately establish the sequence of events nor the totality of the transaction between Belanger and appellant. It did not represent accurate voice tones, or inflection, as evidenced by the necessity for the deputy district attorney to control the tape speed while the jury listened.

■ As a result, the tape recording, admittedly an incomplete record, constituted incompetent and therefore inadmissible evidence. We apply the principle stated in *United States v. Young*, 488 F.2d 1211 (8th Cir. 1973):

"* * * Should the garbled portions be so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy, admissibility will be denied."

In so holding, we avoid the "grave peril" recognized by *Lamar v. State*, 258 Ind. 504, 282 N.E.2d 795, that a jury, confronted with a recording riddled with omissions, will speculate that these gaps contained evidence prejudicial to the defendant. *See generally* Annot., 57 A.L.R.3d 746.

*Compare People v. Quintana*, 189 Colo. 330, 540 P.2d 1097.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE GROVES does not participate.