## No. C-1598

## Jack Alonzi v. The People of the State of Colorado

(597 P.2d 560)

Decided July 2, 1979.

Gerash & Springer, P.C., Jeffrey A. Springer, for petitioner.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant, for respondent.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

Jack Alonzi (petitioner) was convicted by a jury of felony theft and conspiracy.

He has appealed, alleging four errors committed by the trial court: first, the admission into evidence of tape recordings which were without a proper foundation and were so inaudible that they were unreliable; second, the failure to dismiss the charges because the evidence did not demonstrate that he had aided or abetted the commission of the crime of theft and, as such, could not be convicted under the complicity statute of the substantive offense; third, the failure to dismiss the charges because the agent destroyed the notes that he took during the recorded conversations; and fourth, the failure to grant the petitioner's motion for a mistrial because the prosecutor commented before the jury that the petitioner was part of an automobile theft ring.

The court of appeals affirmed the conviction in a well-reasoned opinion which correctly resolved the petitioner's third and fourth arguments. *People v. Alonzi,* 40 Colo. App. 507, 580 P.2d 1263 (1978). As such, we do not address those issues here.

We granted certiorari to consider the petitioner's contentions concerning the admissibility of tape recordings and the effect of the 1971 amendment to the complicity statute, section 18-1-603, C.R.S. 1973 (now in 1978 Repl. Vol. 8), which removed the word "encourages" from the language of the provision. After reviewing his arguments on those issues, we affirm the conviction of the petitioner.

The evidence submitted by the People at trial showed that the petitioner was contacted on September 15, 1975, by an undercover agent of the Colorado Bureau of Investigation (CBI), who indicated an interest in buying stolen cars. The two individuals talked with each other repeatedly over the next four days. The CBI agent recorded sixteen telephone conversations on a cassette tape recorder. In these conversations, the petitioner indicated that he could obtain two stolen Lincoln Continentals for the agent to purchase, although the petitioner noted that he did not steal the vehicles. On September 20, 1975, the agent and the petitioner met, at the direction of the latter, in a motel parking lot where a third party delivered the two automobiles. The petitioner accepted payment from the agent and was then arrested.

At trial, the agent testified that he had recorded the telephone conversations and that they were accurate representations of the conversations. He also stated that he had taken notes during the conversations but had destroyed those notes — pursuant to standard CBI procedure — after incorporating their contents into his final report. The agent admitted

at trial that he did not recall all of the details of the conversations.

## I.

The petitioner's first contention concerns that admissibility of the recorded conversation.[1] He presents two arguments in support of his position that the tapes should have been excluded: first, that no foundation was laid for the admission of the recordings; second, that the inaudible portions of the tapes made them untrustworthy.

Although this court has never expressly promulgated the requirements that must be met in order to lay a proper foundation for the admission of tape recordings into evidence, we note that the general standards for authentification are widely accepted. *See* 58 A.L.R. 2d 1032 and 29 *Am. Jr. 2d Evidence* §436. Such standards are set forth in various cases from other states and in the federal courts. *See, inter alia, State v. Hewett,* 86 Wash. 2d 487, 545 P.2d 1201 (1976); *State v. Warwick,* 158 Mont. 531, 494 P.2d 627 (1972); *Solomon Jr., Inc. v. Edgar,* 92 Ga. App. 207, 88 S.E.2d 167 (1955).

We note with approval the test set out in *United States v. Biggins,* 551 F.2d 64 (5th Cir. 1977) that:
"the [trial] court properly admits a sound recording into evidence only when the party introducing it carries its burden of going forward with foundation evidence demonstrating that the recording as played is an accurate reproduction of relevant sounds previously audited by a witness. As a general rule, at least in the context of a criminal trial, this requires the prosecution to go forward with respect to the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording, and the identification of the relevant speakers."
*See also United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974); *United States v. McKeever,* 169 F.Supp. 426 (S.D.N.Y. 1958).[2]

The petitioner here argues that the criterion of authenticity was not demonstrated because the tapes were not within the custody or control of a competent witness for the ten months between the petitioner's arrest and his trial. As such, they could have been altered.

The establishment of a tape's authenticity does not necessarily require a chain of custody. A chain of custody is necessitated only where it is not possible to establish the identification of the evidence by the

---

[1] The conversations were not presented at trial in their original form. Rather, the prosecution selected excerpts to be played before the jury. The petitioner had access to the tapes and could have played them at trial in their entirety had he elected to do so. We find nothing prejudicial in this procedure. *See People v. Quintana,* 189 Colo. 330, 540 P.2d 1097 (1975).
[2] We do not adopt the test set forth in *McKeever, supra,* and recently adopted in *McMillan, supra,* which requires the prosecution to prove seven explicit facts. A foundation can be established by the trial court's review of the evidence as a whole and subsequent determination that the recording is authentic in view of the factors stated in the text above.

testimony of a single witness. Where the evidence can be identified by a witness without his continued control over it, no chain of custody is needed. *Reynolds v. People,* 172 Colo. 137, 471 P.2d 417 (1970). *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965).

The petitioner argues that the admissibility of tape recordings should not be governed by these principles because of the fact that, although the tape can be identified, the recording could be altered and thus not authentic. Of course, the possibility of tampering is an important factor in a trial court's determination of the tape's authenticity. It is therefore incumbent on the proponent of the tape recording to produce clear and convincing evidence of authenticity and accuracy. However, more than mere speculation by the defense is required to preclude the admissibility of the recording on this basis. *See People v. Atencio,* 193 Colo. 184, 565 P.2d 921 (1977). The prosecution is required only to establish to the satisfaction of the court, with a reasonable degree of certainty, that no such tampering took place. *See People v. Smith,* 182 Colo. 228, 512 P.2d 269 (1973).

The trial court has wide discretion in determining the admissibility of the tape recordings, and its finding will not be disturbed on appeal absent a showing of a clearly insufficient foundation. *People v. Quintana,* 189 Colo. 330, 540 P.2d 1097 (1975); *Sandoval v. People,* 172 Colo. 383, 473 P.2d 722 (1970).

## II.

The petitioner's second argument concerning the tape recordings is that, even if a proper foundation was laid, the inaudibility of large segments of the taped conversations rendered the recording inadmissible under *People v. Odneal,* 192 Colo. 382, 559 P.2d 230 (1977). We disagree.

As we stated in *Odneal,* tapes which are inherently unreliable for the purpose for which they are offered are inadmissible. This standard necessarily mandates consideration of the purposes for which the tape was offered into evidence as well as the quality of the recording. In *Odneal,* a recording of one conversation was admitted into evidence to show the inflections and intonations of the voices. Because the tape was poor, blurred, inaudible, and recorded at variable speeds, we held that the recording was untrustworthy for that purpose.

Here, however, recordings of sixteen conversations were offered to reveal the content of those conversations. Although some segments of the recordings were inaudible, the entire conversations were not "poor, blurred, and inaudible" as was the tape in *Odneal.*

The mere presence of inaudible segments does not render an entire tape unreliable to reveal the content of the conversation. *Quintana, supra. United States v. Knohl,* 379 F.2d 427. Accordingly, it was within the discretion of the trial court to find that the recordings here were reliable and thus to admit the tape into evidence. *United States v. Avila,*

443 F.2d 792 (5th Cir.), *cert. denied,* 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971).

### III.

We next address the petitioner's contention that his conduct in this case does not constitute theft. The People argue that the petitioner is legally accountable for theft because of the complicity statute, section 18-1-603, C.R.S. 1973, which states:

"18-1-603. Complicity. A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense."

This statute was amended in 1971 to remove the word "encourages" from its language. The petitioner concedes that, viewing the evidence in the light most favorable to the prosecution, his conviction would have to be affirmed under the prior complicity statute because his conduct did constitute encouragement. However, the petitioner argues that the amendment of the provision to remove the word "encourages" indicates the legislature's intent to treat the mere encouragement of an offense differently than the commission of the substantive offense itself. The People contend that the legislature removed the word simply because "encourages" is implicit in "abets."

■ Under the plain language of the statute, one who abets the commission of a criminal offense is legally accountable for the violation of the substantive offense. *People v. Buckner,* 180 Colo. 65, 504 P.2d 669 (1972). The evidence at trial clearly supported the conclusion that the petitioner encouraged the substantive offense of theft in this case. Thus, the resolution of this issue turns on whether or not the definition of "abets" encompasses "encourages." We hold that it does.

■ Words in a statute should be given their familiar and generally accepted meanings. *People v. Gallegos,* 193 Colo. 108, 563 P.2d 937 (1977). "Encourage" is included in the accepted definition of "abet." *Black's Law Dictionary* 17 (4th ed. 1951); *Webster's Third New International Dictionary* 3 (1961). In addition, although this court has not previously defined the word, other courts have expressly included "encourage" within the definition of "abet." *People v. Francis,* 75 Cal. Rptr. 199, 450 P.2d 591 (1969); *Hallback v. State,* 361 P.2d 336 (Alaska, 1961); *State v. Roberts,* 85 Ariz. 252, 336 P.2d 151 (1959).

The plain meaning of "abet" includes "encourage." If the language of a statute is plain, it will not be subjected to a strained interpretation. *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973). As such, the petitioner's conduct in this case falls within the complicity statute and his conviction for felony theft must stand.[3]

As noted above, the petitioner's other contentions were correctly resolved by the court of appeals. Accordingly, the judgment is affirmed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent in part. In my view, the foundation necessary to admit a tape recording was properly enunciated in *United States v. McKeever,* 169 F.Supp. 426 (S.D.N.Y.) and approved in *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974).

In my opinion, no proper foundation was laid for the admission of the tape recordings, and the recordings should not have been admitted into evidence.

Accordingly, I would reverse and order a new trial.

MR. JUSTICE CARRIGAN has authorized me to say that he joins me in this dissent.

---

[3] The petitioner argues that this construction violates his right to equal protection because the same conduct — encouragement — is proscribed under both the criminal solicitation statute, section 18-2-301, C.R.S. 1973, and the criminal complicity statute, for which there are different penalties. Although encouragement of a criminal offense is prohibited under both statutes, the solicitation statute concerns incomplete acts, and the complicity statute covers consummated criminal offenses. Because the provisions proscribe distinguishable behavior, there is no violation of equal protection.