Robert S. **BENHAM**, as Receiver of Manufacturers and Wholesalers Indemnity Exchange, Plaintiff-Appellee,

v.

**MANUFACTURERS AND WHOLESALERS INDEMNITY EXCHANGE,**
Defendant-Appellee,

and

**W.J. Digby, Inc.**, a Nevada corporation, Defendant Applicant for Intervention-Appellant.

Nos. 80CA0756, 80CA0983.

Colorado Court of Appeals, Div. I.

April 19, 1984.

Rehearing Denied May 17, 1984.

Holmes & Starr, P.C., Kenneth L. Starr, Jeffrey Reiman, Dirk T. Biermann, Denver, for plaintiff-appellee.

Geer & Goodwin, P.C., Albert B. Dawkins, Robert E. Goodwin, Denver, for defendant applicant for intervention-appellant.

KELLY, Judge.

This consolidated appeal challenges the rulings entered in two proceedings involving Manufacturers and Wholesalers Indemnity Exchange, a defunct interinsurance exchange, and W.J. Digby, Inc., a trucking company and former policyholder of Manufacturers. Manufacturers was placed in receivership in 1975. The division of the district court in which the receivership was filed (Receivership Court) authorized the receiver to sue former Manufacturers' policyholders to recover assessment liabilities, and suit was thereupon filed in another division of the district court (Assessment Court) against a number of former policyholders, including Digby. Digby appeals the Assessment Court's rulings striking several of its defenses, imposing assessment liability against Digby as a matter of law, and awarding the receiver attorney's fees and prejudgment interest. We affirm the challenged rulings of both courts.

Manufacturers was an interinsurance exchange organized in 1919 and operated pursuant to § 10–13–101, et seq., C.R.S. An interinsurance exchange is an unincorporated association of individuals, partnerships, and corporations, called subscribers, who exchange contracts of insurance with each other, providing indemnity among themselves. Section 10–13–101, C.R.S. The subscribers insure each other; thus, each subscriber is both an insurer and an insured. Manufacturers' major asset consisted of the insurance premiums paid by its subscribers; its claims and expenses were paid from its premiums, and its policyholders shared in its profits.

By means of a provision in every Manufacturers' insurance policy, its subscribers were obligated to share in its losses. Each subscriber was subject to payment of an assessment on demand in an amount of up to one year's premium per policy. Here, both a 1974 and a 1975 policy are involved.

Digby is a trucking company which owns and operates its own trucks and also employs independent truck drivers to meet its customers' needs, as circumstances require. It has been and continues to be Digby's position in this litigation that it acted only as agent for its independent truckers in procuring the policy from Manufacturers in which Digby was the named insured, and that, accordingly, it was the independent truckers, and not Digby, who were the "insured" under the policy.

Excess losses in 1974 and 1975 resulted in an investigation of Manufacturers by the Colorado Commissioner of Insurance, and the exchange was placed in receivership. A receiver was appointed, and Manufacturers was ordered to stop issuing insurance policies effective December 1, 1975. Accordingly, after that date, Manufacturers'

principal asset was the contingent assessment liability under the provisions of its previously issued policies.

The Receivership Court authorized the receiver to levy assessments on all subscribers having policies in effect in 1974 and 1975, and the receiver sued 46 former subscribers having the largest outstanding assessment liabilities. As a result of settlements, Digby was the sole remaining defendant at the time of trial.

After Digby's motion to intervene in the Receivership Court to challenge the reasonableness of the assessment was denied by the Receivership Court, the Assessment Court granted the receiver's motion for partial summary judgment, ruling that a 1975 insurance policy had been found in Digby's files, and that Manufacturers had issued the policy to Digby in 1975. The Assessment Court also ruled that Digby had paid premiums to and had received benefits from Manufacturers, and was accordingly liable to pay the assessment.

The Assessment Court struck a number of Digby's defenses as being unmeritorious as a matter of law. These included Digby's defense based on alleged improprieties of the Colorado Commissioner of Insurance and Manufacturers, the allegedly unreasonable manner in which the assessment had been levied and computed, the alleged exclusive liability of Digby's truckers, and the alleged lack of a power of attorney signed by Digby. The Assessment Court entered summary judgment against Digby on the 1975 insurance policy in the amount of $61,044, this amount being equal to the premiums paid on the 1975 insurance policy.

As to the 1974 insurance policy, which was not located in Digby's files, four days of trial ensued, after which the Assessment Court granted the motion for directed verdict in favor of the receiver. The Assessment Court again found that the facts were undisputed, that Manufacturers had issued the policy to Digby in 1974, that Digby had paid premiums to and had received benefits from Manufacturers, and that Digby was liable to pay the assessment. Judgment

was thus entered on the 1974 policy in the amount of $97,620, reflecting the premiums paid under the 1974 policy. Digby later filed a motion in the Receivership Court for reconsideration of its motion to intervene, and this motion was denied.

## I. THE MOTION TO INTERVENE

Digby argues that the Receivership Court erred in denying its motion to intervene for the purpose of challenging the reasonableness of the assessment. Digby asserts that "the crucial issue" which needs to be litigated is whether "the assessment asked for by the receiver [is] reasonable in relation to [Manufacturers'] liabilities?" We disagree with Digby's arguments for several reasons.

Digby is both a contingent creditor of Manufacturers, to the extent that it may have an insurance claim, and a contingent debtor, to the extent that it may be liable to pay the assessment.

"To the extent of the contingent liability provided for in the contract each member became an insurer as well as an insured. This principle of mutuality, of bilateral contractual obligations, forms the solid core of [interinsurance contracts]. The members in effect enter into mutual covenants to indemnify each other against loss, and they contract through and with the company."

*Aronoff v. Pioneer Mutual Compensation Co.*, 134 Colo. 395, 304 P.2d 1083 (1956).

Digby's status as a creditor was adequately represented by the receiver in that the receiver had obtained the approval of the Receivership Court to levy an assessment, and had thereby increased Manufacturers' assets. The receiver is regarded as the assessee's representative in the Receivership Court proceedings.

"[T]he order levying the assessment is made conclusive as to all matters relating to the amount and propriety thereof, and the necessity therefor; that it is thus conclusive, although the stockholder may not have been a party to the suit in which it was made or notified that an assess-

ment was contemplated, as the order is not in the nature of a personal judgment against him and he must be deemed, by virtue of his relation to the corporation and the obligation assumed with respect to its debts, to be represented by it in the proceeding ...."

*Chandler v. Peketz,* 297 U.S. 609, 56 S.Ct. 602, 80 L.Ed. 881 (1936). The adequacy of the receiver's representation bars the right to intervene. C.R.C.P. 24(a)(2).

■■■ Since Digby, by accepting the insurance policy, conferred upon Manufacturers the discretion to determine the timing and amount of an assessment up to one annual premium, and since the receiver succeeded to Manufacturers' authority to levy assessments, the representation by the receiver of Digby's interest was adequate. Moreover, when discretion is conferred upon a party to a contract, or upon a third party, the exercise of the discretion cannot be attacked by showing unreasonableness. *See Empson Packing Co. v. Clawson,* 43 Colo. 188, 95 P. 546 (1908); *Rywalt v. Writer Corp.,* 34 Colo.App. 334, 526 P.2d 316 (1974). The decision of the receiver, as successor to Manufacturers, to levy an assessment, being a discretionary act, is protected under this doctrine.

## II. THE PARTIAL SUMMARY JUDGMENT AND DIRECTED VERDICT

Digby argues that the undisputed facts found by the trial court are not sufficient to establish its liability to assessment under the 1975 policy. Digby asserts that it was acting merely as an agent for certain independent contractor truck drivers employed by Digby for whom the Manufacturers policy was purchased as a "master" insurance policy.

■■■ As the rights and duties evolving from an accident insurance policy are contractual in nature, they are measured by the terms and conditions of the insurance contract entered into by the parties. *Marez v. Dairyland Insurance Co.,* 638 P.2d 286 (Colo.1981). Moreover, since insurance contracts are construed according to the general rules of contract law, *Marez, su-*

*pra,* they are interpreted to give effect to the intent of the parties with that intent being determined by the contract language itself. *Union Rural Electric Ass'n v. Public Utilities Commission,* 661 P.2d 247 (Colo.1983). Only if the terms of an agreement are ambiguous will extrinsic evidence of intent be relevant, and a mere disagreement between the parties as to the interpretation of the agreement will not in itself create an ambiguity as a matter of law. *Union Rural, supra.*

■■■ Since the interpretation of insurance contracts involves a question of law, this court is not bound by the trial court's interpretation. *Eisenhower Hospital Osteopathic v. Taylor,* 43 Colo.App. 498, 609 P.2d 1114 (1979). Our examination of the policy, however, convinces us that the trial court was correct. We agree that the contract is not ambiguous. The court's conclusion that Digby is a named insured will not be disturbed on review. Therefore, Digby is a member of the exchange and is liable for the assessment, and the trial court properly entered partial summary judgment as to Digby's liability under the 1975 policy.

■■■ Digby's argument that the trial court's findings of fact were inadequate to establish Digby's liability on the 1974 policy lacks merit. The record supports the findings that Digby both paid premiums to Manufacturers and received benefits from Manufacturers. This is adequate to establish Digby's liability. The motion for directed verdict was properly granted for the same reasons that the motion for partial summary judgment was granted.

## III. ORDER STRIKING DEFENSES

A. Alleged Impropriety of Commissioner of Insurance.

■■■ Digby asserts it was defrauded by acts of the Insurance Commissioner concealing the insolvency of Manufacturers. The trial court ruled that, while an alleged impropriety of the Insurance Commissioner might give rise to a third-party action

against the Commissioner, it would not absolve a subscriber of assessment liability. We agree.

While Digby is correct that *Aronoff v. Pioneer Mutual, supra,* is distinguishable on its facts, the policy underlying that ruling nevertheless supports the trial court's conclusion here. In *Aronoff,* the court prohibited a policyholder's attack on the assessment stating that a policyholder could not deny the existence of the insurance corporation so as to avoid an obligation into which he had deliberately entered, and upon faith of which others became co-insurers and co-insured with him. To allow the policyholder to make the attack, and thereby avoid payment to the fund, would, in effect, permit him to practice fraud on the others.

Here, Digby entered into an interinsurance exchange in which all subscribers relied on each other for the success of the exchange. Digby received the special benefits afforded members of an interinsurance exchange, *i.e.,* lower premiums. Under these circumstances, Digby may not avoid the assessment because of the purported acts of the Insurance Commissioner.

### B. Fraudulent Inducement.

■ Digby asserts it was fraudulently induced to purchase the insurance by Manufacturers' false representation of solvency. Although the fraud complained of in *Aronoff, supra,* was practiced on the insurance commissioner, the same rationale for disallowing a policyholder's attack applies here. If Digby were fraudulently induced, its proper course of action is to proceed against those responsible for the fraud in a separate action and not to challenge the assessment on those grounds.

### C. Prejudgment Interest.

Digby contends that a showing of "tortious or at least tort-like behavior" or "some showing of bad faith or a gross mistake" must be shown before prejudgment interest may be awarded. There is nothing in the language of the statute to support this argument.

The applicable statutory provision, § 5–12–102(1), C.R.S. (1983 Cum.Supp.), states:

"Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight per cent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs."

■ Nothing in these sections indicates a requirement that a creditor must establish tortious conduct on the part of the debtor. Had the General Assembly so intended, it would have so stated. Accordingly, the language must be interpreted according to its generally accepted meaning. *Alonzi v. People,* 198 Colo. 160, 597 P.2d 560 (1979). The trial court made the requisite finding that the conduct was wrongful and properly entered prejudgment interest.

We have considered Digby's other arguments and conclude that they are without merit.

Judgments affirmed.

PIERCE and VAN CISE, JJ., concur.